UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK J. LANDON,

    Plaintiff,                                     Case No.: 8:15-cv-2272-CEH-JSS

vs.

CITY OF NORTH PORT,

    Defendant.
_____/

## PLAINTIFF'S MOTION IN LIMINE

Plaintiff MARK J. LANDON, by the undersigned counsel moves this Court pursuant to Rules 104, 401, 402, 403, 602, 701 and 702(b), Fed. R. Evid. to enter an order excluding evidence and in support states as follows:

### Relevant Facts

1. Plaintiff sued the CITY OF NORTH PORT ("City") for violating his civil rights afforded by the Fourth Amendment under 42 U.S.C. § 1983. The violation of Plaintiff's rights occurred when Officer Keith Bush of the City used excessive force against the Plaintiff by commanding a police K-9 dog to bite him after he had attempted a suicide by cutting his left wrist with a knife.[1]

2. The operative complaint is Plaintiff's Amended Complaint. Count I of the Amended Complaint is a § 1983 count against the City for its failure to train or supervise the City's K-9 officers. Count II is a § 1983 count against the City for failing to discipline its K-9 officers. Count III is a state law count for battery.

---

[1] A further rendition of the facts is included in the Pretrial Statement which was filed by the undersigned on July 21, 2017 (Doc. 73).

3. Plaintiff's position with respect to Counts I & II is that Defendant had a custom or policy of failing to train, supervise and discipline its K-9 officers which resulted in a deliberate indifference to the rights of the citizens of the City. Such deliberate indifference allowed a string of excessive force incidents to occur leading up to Plaintiff's dog bite apprehension.

4. The City denies that excessive force was used on the Plaintiff or any other persons. To support this position, the City has retained two expert witnesses: Dr. Michael VanRooyen and Kenneth Wallentine.

5. Dr. VanRooyen rendered the following two expert opinions in his expert report: "1. It was reasonable to anticipate that this patient could be armed and dangerous and it was therefore not safe for paramedics to approach him blindly to initiate the medical response."; and "2. The Patient's self-inflicted arterial laceration constituted a potentially life threatening injury that required an immediate, but safe, assessment and treatment of the patient and evacuation from the scene to a trauma center." (Exhibit 1 – Dr. VanRooyen's report – P.4 "Opinions").

6. Kenneth Wallentine rendered the following three expert opinions in his expert report: 1. "The decision to deploy a service dog to locate plaintiff was reasonable and was consistent with generally accepted policies, practices and training for police service dog teams"; 2. "Officer Bush's decision to use his police service dog to apprehend and control plaintiff was reasonable and was consistent with generally accepted policies, practices and training for police service dog teams and law enforcement officers"; and 3. "The North Port Police Department properly supervised the Officer Bush and police service dog TOMY. The supervision structure and practice team was consistent with generally accepted policies, practices and training for police service dog teams." (Exhibit 2 – Kenneth Wallentine's report – Pg. 4 & 7 & 9).

**Relief Requested**

Section I of this Motion seeks the exclusion of Defendant's expert testimony regarding several issues. First, Plaintiff seeks to preclude expert Dr. VanRooyen from providing any testimony on Plaintiff's K-9 injury. This limitation would include any testimony concerning the diagnosis of the medical complications related to the K-9 injury and the treatment for same. Second, Plaintiff seeks to exclude Dr. VanRooyen's testimony regarding whether it was reasonable to anticipate that Plaintiff could be armed and dangerous and that it was not safe for paramedics to approach him blindly. Third, Plaintiff seeks to prohibit Kenneth Wallentine from providing an opinion on the reasonableness of the City's K-9 officer's use of force with respect to any dog bite apprehensions that occurred prior to or after the Plaintiff's dog bite. Fourth, Plaintiff seeks to prohibit Kenneth Wallentine from providing an opinion on whether the City failed to properly train and discipline its officers.

Section II of this Motion seeks the exclusion of certain non-expert testimony. Plaintiff seeks to exclude the Defendant from providing any testimony or evidence regarding Plaintiff's criminal history. Finally, Plaintiff seeks to exclude testimony regarding the reasonableness of Officer Bush's use of force on Mark Landon by any officers who did not witness the K-9 dog bite apprehension.

**Memorandum of Legal Authority and Basis for Relief Requested**

Evidence is only relevant to an action when "the fact is of consequence in determining the action." Rule 401, Fed. R. Evid. Further, irrelevant evidence is not admissible. Rule 402, Fed. R. Evid.

Additionally, in order for expert testimony to be admissible, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." See. Fed. R. Evid. 702; *United*

*States v. Smith*, 122 F.3d 1355, 1358 (11th Cir. 1997) (Expert testimony that does not assist the trier of fact can be excluded). Further, to assist the trier of fact, expert testimony must be "relevant to the task at hand," such that it "logically advances a material aspect" of the case. McDowell v. Brown, 392 F.3d 1283, 1298-99 (11th Cir. 2004). Even if expert testimony is relevant, it must be "based on sufficient facts or data" Fed. R. Evid. 702(b).

Furthermore, section I.(E.) of the Amended Case Management Order addresses limitations on the admissibility of expert testimony and states as follows: "…Expert testimony on direct examination at trial will be limited to the opinions, bases, reasons, data, and other information disclosed in the written expert report … Failure to disclose such information may result in the exclusion of all or part of the testimony of the expert witness."

I. **Requests for Expert Testimony to be Limited**

  A. **Dr. VanRooyen's Opinion on Mark Landon's Injury**

Dr. VanRooyen appears to have been retained as a medical expert for the City; however, his medical opinion in his expert report is limited to a discussion of Mark Landon's self-inflicted wrist laceration. Specifically, Dr. VanRooyen states that "The Patient's self-inflicted arterial laceration constituted a potentially life threatening injury that required an immediate, but safe, assessment and treatment of the patient and evacuation from the scene to a trauma center." (Ex. 1 – VanRooyen Report - P.4). Whether Mark Landon's wrist laceration was a potentially life threatening injury that required immediate medical care isn't even an issue relevant to the claims and defenses in this case. Instead, the issue is whether the City police responded to Mark Landon's suicide with appropriate force and whether the City K-9 officers were properly trained, supervised and disciplined. The injury that Mark Landon seeks damages over relates to his K-9 dog bite injury, not his wrist injury (which undisputedly occurred).

Dr. VanRooyen's report doesn't discuss Mark Landon's K-9 dog bite injury. In fact, Dr. VanRooyen's report is completely devoid of any opinion pertaining to the dog bite medical injury, complications, diagnosis and treatment of same. Therefore, Dr. VanRooyen should not be permitted to provide any opinions at trial concerning the medical significance of Mark Landon's dog bite injury, nor should he be permitted to offer any rebuttal to the Plaintiff's medical expert's opinions. Plaintiff retained a medical expert, Dr. Diaz, who has diagnosed him with neurological complications resulting from the dog bite injury and has recommended treatment for same. Dr. Diaz has opined that Plaintiff's dog bite wound became infected and that Plaintiff currently suffers from a condition called intercostal neuralgia as a result of the dog bite. This diagnosis was made on October 10, 2016 after Dr. Diaz had the opportunity to review Plaintiff's medical records and to visit with Plaintiff in person for a physical evaluation and assessment. (Exhibit 3 – Dr. Diaz's report). Dr. Diaz's report discusses this diagnosis along with an opinion on the permanency and treatment options for same. As an aside, even if Dr. VanRooyen is qualified to address the diagnosis made by Dr. Diaz, he has not met Mark Landon, performed any physical examination of his injury and did not even review Dr. Diaz's report until after Dr. VanRooyen wrote his report.[2] Therefore, for the reasons stated above, Dr. VanRooyen should not be permitted to testify at trial on the medical condition associated with Mark Landon's dog bite injury. Allowing such an opinion would severely prejudice the Plaintiff as such opinions were not contained in Dr. VanRooyen's expert report, and hence Plaintiff did not depose him on these issues nor challenge his ability to provide such an opinion under Daubert.

---

[2] Dr. Diaz's opinion is outlined in his expert report which was submitted prior to the deadline for the Defendant's expert reports.

## B. Dr. VanRooyen's Opinion that Mark Landon was Dangerous

### a. Irrelevant to the Case

Dr. VanRooyen provided the opinion in his expert report that "[i]t was reasonable to anticipate that this patient could be armed and dangerous and it was therefore not safe for paramedics to approach him blindly to initiate the medical response." (Ex. 1 – VanRooyen Report - P.4). This entire opinion should be excluded as it has nothing to do with the causes of action in the Amended Complaint nor the averments and affirmative defenses pleaded by the Defendant. Whether it was safe or reasonable for paramedics to respond to Mark Landon prior to the City's police response is not at issue in this case. Further, Dr. VanRooyen's opinion that it was reasonable to anticipate that Mark Landon could be armed and dangerous is not something he should be permitted to opine on. This case is about the reasonableness of law enforcement's response, not other types of emergency responders.

### b. No Facts to Support this Opinion

Furthermore, there are no facts to support this opinion. Assuming arguendo that Dr. VanRooyen is even qualified to give such an opinion, he could not state facts to support this opinion. In an attempt to support this opinion, Dr. VanRooyen states in his report that "[t]he patient's presentation prior to his apprehension was such that it was reasonable for paramedics to allow law enforcement to secure the scene and assure that they could safely treat the patient." (Ex. 1 – VanRooyen Report - P. 4). First, Dr. VanRooyen admitted in his deposition that he never reviewed the deposition transcript of Mark Landon, making his assessment of the safety of the scene completely nonobjective and biased. (Exhibit 4 – Dep. VanRooyen P.39, L.6-8) (Q. "Did you review the transcript of the Plaintiff in this case? A. I did not."). Second, Dr. VanRooyen doesn't even know whether emergency response personnel were in a position

wherein they were contemplating approaching Mr. Landon blindly. He stated in his deposition as follows:

> Q. And are you aware as to whether EMS was present at Mark Landon's incident prior to the dog bite apprehension occurring?
> A. It's not – I don't believe from the review of the records that EMS was present prior to his apprehension by the police or before that time. In other words, I don't believe that EMS had contact with him at that time.
> Q. Are you aware based on your review of the documents and records whether EMS was waiting for the North Port Police Department to secure Mark Landon before they rendered any services?
> A. I believe that they had arrived at such a time when the North Port Police Department was securing the scene. I don't know at what point they were present during the apprehension of the patient.
> (Ex. 4. – Dep. VanRooyen - P. 60-61, L.12-5).

Further, Dr. VanRooyen doesn't specify anywhere in his report that emergency responders were waiting for law enforcement to assess the safety of the scene so they didn't blindly go in to treat Mark Landon. Therefore, even if this type of opinion was relevant to the case, it is not founded on facts that pertain to this case. Dr. VanRooyen has no knowledge as to whether EMS had to make a decision on whether to provide emergency services or wait for law enforcement to respond. Thus, whether EMS should have gone in blindly isn't an opinion he can provide.

### c. Not a Proper Opinion by an Emergency Physician

Whether EMS should wait on law enforcement to assess the safety of a scene is not a decision that is generally made by an emergency physician according to Dr. VanRooyen. During his deposition, Dr. VanRooyen stated as follows:

> Q. Is it ever typical for an EMS individual or a paramedic to contact an emergency physician and ask whether it's safe for them to render services to either a suicide suspect or a criminal suspect?
> A. Not typically. Although we will get calls that indicate if there is a question or issue regarding scene safety, but it is not asking us if we are rendering an opinion as to whether the case – the scene is safe or not.
> Q. So to your knowledge, is that determination made solely by law enforcement that responds to the scene?

> A. Well, it would be, I think, paramedics are also in the position of assessing scene safety…
> Q. Okay. But it wouldn't be typical for that paramedic to call an emergency physician to ask whether, you know, law enforcement should make the scene safe for them to render services?
> A. No. Not typically…
> (Ex. 4 – Dep. VanRooyen - P.17-18, L.19-21).

In the subject case, there is no evidence that emergency response personnel contacted an emergency physician to determine whether to go into the scene blindly. Dr. VanRooyen's opinion on this issue is not relevant, not based on facts and not within the scope of what he should be rendering an opinion on. Even if such an opinion was relevant and based on facts in the case, it is an opinion for law enforcement. The legal standard for police use of force is an objective standard and has been defined by the Eleventh Circuit as follows: "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Mercado v. City of Orlando*, 407 F.3d 1152, 1157 (11th Cir. 2005). However, Dr. VanRooyen admitted that he has no law enforcement training in his deposition: "Q. Do you have any law enforcement training as well? A. No." It is noteworthy that, while Dr. VanRooyen does have a plethora of experience serving as an emergency physician in international wars, providing medical services to victims in war is simply not analogous to local emergency responder's assessment of the safety of a domestic non-criminal suicide scene.

### C. Expert Kenneth Wallentine - Testimony Regarding Prior Related Incidents

Mr. Wallentine did not provide an opinion in his expert report – or at his deposition - as to whether the City's police used excessive force in any other K-9 dog bite incidents including those involving Tyler Langston, Danielle Drake, and Jared Lemay. His report makes no reference to any of these related dog bite cases. Pursuant to the Amended Case Management Order, trial testimony is limited to what is in the scope of each expert's report. Further, the

undersigned asked Mr. Wallentine at his deposition if he provided an opinion on these other cases. He indicated that he hadn't.

> Q. Have you been retained to render an opinion for the City of North Port on whether excessive force was used on Danielle Drake?
> A. I have been asked to discuss the Drake matter with attorneys.
> Q. Does that mean you haven't been retained yet?
> A. I have not.
> …
> I have not been retained in that matter. I have been consulted in that matter by another attorney from another firm.
> (Exhibit 5 – Dep. Wallentine – P.120-121, L.13-5).

…

Additionally, Mr. Wallentine didn't know whether he had rendered an opinion on whether use of force was excessive for the Tyler Langston case; although it certainly wasn't in his report for the subject case and thus testimony on same should not be admissible at trial.

> Q. Have you written an expert report regarding whether proper force was used against an individual named Tyler Langston by the City of North Port Police Department?
> A. I believe the answer is yes.
> …
> Q. Do you recall what your opinion is in that report?
> A. I – no, I haven't looked at that in quite some time. And I'm not even – I'm not even certain that's the case I'm thinking of.
> (*Id*. at P.121-122, L.16-3).
> Further,
> Q. Okay. What about for Jared Lemay?
> A. I have been asked to consult in that case. I have not done any report in that case.
> (*Id*. at P. 122, L.9-11).

Therefore, no opinions were rendered by Mr. Wallentine for the subject case concerning whether excessive force was used against Tyler Langston, Danielle Drake and Jared Lemay and thus no testimony should be admitted at trial regarding Mr. Wallentine's opinion on these cases. Such testimony would be outside of the permissible testimony based on the Amended Case Management Order. Further, such testimony would severely prejudice Plaintiff as the

undersigned never had an opportunity to depose the expert witness on an expert opinion regarding these cases.

    **D. Expert Kenneth Wallentine - Testimony Regarding a Failure to Train and Failure to Discipline**

Count I and Count II of the Amended Complaint allege a Failure to Train and Supervise and a Failure to Discipline against the City. However, Mr. Wallentine did not provide an opinion in his expert report on whether the City failed to train its K-9 officers or whether it failed to discipline its K-9 officers. Mr. Wallentine doesn't discuss police training in his expert report. Further, during his deposition he admitted that he did not provide an opinion on whether Officer Keith Bush was properly trained. "Q. Are you providing an opinion in this case as to whether Officer Keith Bush was properly trained as a K-9 officer? A. I haven't been asked that question yet." (*Id*. at P.104-105, L. 25-3).

Additionally, Mr. Wallentine did not provide an opinion on whether the City of North Port failed to discipline its officers in his expert report. Therefore, he should not be able to address this issue at trial. Further, Mr. Wallentine did not provide any opinion on the discipline of the City's officers in other related events. Therefore he should not be able to opine on that issue at trial.

**II.**    **Requests for Other Evidence to be Limited**

  **A. Mark Landon's Criminal History**

No reference to Mark Landon's criminal history should be permitted at trial. First, for purposes of impeachment, Mark Landon hasn't been convicted of a felony charge or a crime of false statements or dishonesty. Second, his criminal charges are of no probative value for purposes of this case. Officer Bush, the City's officer who apprehended Mark Landon was completely unaware of his criminal history prior to the apprehension and therefore, it was not a

factor that was taken into consideration for his use of force. Where there is "no allegation that the arresting officers were aware of [Plaintiff's] arrest history," such arrest evidence is irrelevant under the Federal Rules of Evidence. *Nibbs v. Goulart*, 822 F.Supp.2d 339, 345 (S.D.N.Y. 2011) (excluding arrest history of plaintiff). During his deposition, Officer Bush stated as follows:

> Q. So what did you know about Mark Landon prior to arriving to the scene that he was located in?
> A. I don't know. I don't know – I've never met him before so…
> Q. Did you know whether he had a criminal history?
> A. No.
> (Exhibit 6 – Dep. Bush - P.53-54, L.21-1).
> …
> Q. Did you run a criminal history on Mark Landon prior to arriving at the call?
> A. No.
> Q. And you didn't know who Mark Landon was before you got this call?
> A. No.
> (*Id*. at P.55, L.9-14).

Further, even if the Court found that there was probative value of Mark Landon's prior criminal history, admitting evidence of the same would be substantially outweighed by the prejudice it would cause to Plaintiff under Rule § 403, Fed. R. Evid.

### B. Responding Officers Opinions on Reasonableness

As previously stated, whether excessive force was used on the Plaintiff is based on a reasonable officer standard. Both the Plaintiff and Defendant have retained expert officers to provide an opinion on the objective reasonableness of the use of force on Mark Landon. The only other officers who should be permitted to opine as to reasonableness of the dog bite apprehension on Mark Landon are Officer Keith Bush and Officer Dino Murges, the only two responding officers who witnessed the dog bite apprehension. Many other officers responded to the Plaintiff's suicide attempt; however, none of them have any personal firsthand knowledge as to the facts regarding the actual dog bite apprehension. Therefore, these other officers opinions on the reasonableness of the use of force on Mark Landon would not be based on the required

personal knowledge under Rule § 602, Fed. R. Evid. Instead, such opinions would be based on hearsay from the two responding officers. Reliance on such hearsay is permitted for expert witnesses but not for lay person testimony. And should the responding officers who did not witness the dog bite be permitted to provide an opinion on the reasonableness of the use of force on Plaintiff, they would be providing lay witness opinion testimony under Rule 701, Fed. R. Evid. Such lay opinion testimony cannot be permitted when it is not "rationally based on the witness's perception;" *See* Rule 701(a). This limitation "is the familiar requirement of first-hand knowledge or observation." *See* Rule 701 – Notes of Advisory Committee. Further, none of the responding officers were named as expert witnesses. Instead, Defendant designated an expert Kenneth Wallentine to opine on the objective reasonableness of Officer Bush's use of force.

## CERTIFICATE OF GOOD FAITH COMPLIANCE WITH LOCAL RULE 3.01(g)

In accordance with Local Rule 3.01(g), counsel for Plaintiff conferred with Counsel for the Defendant and no agreement was made with respect to any of the relief sought in this Motion.

WHEREFORE, for the reasons set forth herein, Plaintiff requests this honorable Court grant this Motion in Limine in its entirety and for such other and further relief as this Court deems just and proper.

*(Certificate of Service to Follow)*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 24, 2017, I electronically served the foregoing to the following: Vicki L. Sproat, Esq. and Robert Shearman, Esq., Henderson, Franklin, Starnes & Holt, P.A., 1715 Monroe Street, Fort Myers, FL 33902, Robert.Shearman@henlaw.com, courtney.ward@henlaw.com, Vicki.Sproat@henlaw.com and Lorraine.Zerner@henlaw.com, counsel for Defendant.

**MORAN, SANCHY & ASSOCIATES**
1800 Second Street, Suite 830
Sarasota, Florida 34236
P: (941) 366-1800
F: (941) 954-7101

*/s/ Don Cahall*

_____
**Don R. Cahall**
Florida Bar No. 110578
E-mail: dcahall@moransanchylaw.com