Brigham and Women's Hospital
Department of Emergency Medicine

Harvard Medical School
Harvard School of Public Health

Michael VanRooyen, MD, MPH

*Office Address:*
*75 Francis Street*
*Boston, Massachusetts 02115*

January 30, 2017

Robert Shearman, Esq.
Henderson, Franklin, Starnes and Holt, PA
1715 Monroe Street
PO Box 280
Ft. Meyers, Florida 33901

***Re: Landon v City of North Port, et al.***

Dear Mr. Shearman,

At your request, I have reviewed the available records pertaining to the EMS (pre-hospital) care provided to Mark Landon by the North Port Fire Rescue R81 providers and the Bayflight Lifeflight paramedics in conjunction with the North Port Police Department responders on July 20, 2014. I have also reviewed the records of Blake Medical Center emergency department and trauma evaluation. I have reviewed these records to determine the degree to which the EMS first responders 1) should have reasonably expected a possible high-risk rescue scenario and 2) determined if Mr. Landon's self-inflicted injuries necessitated urgent but safe evacuation for assessment and treatment.

My opinions are based on the documented eye-witness accounts of the event, the pre-hospital care records and the medical records from the emergency department at Blake Medical Center. My opinions are subject to revision based on additional information as it becomes available. My opinions are also based on my education, training and experience in the practice of emergency medicine locally and globally and my understanding of pre-hospital care systems and practices. My evaluation of the case was a "blinded review" as I initially reviewed only the above records prior to reviewing the complaint or any additional documentation regarding the course or outcome in this case.

**Qualifications:**

I certify that I am a medical doctor licensed to practice medicine in the state of Massachusetts. I obtained my medical degree from Wayne State University in 1988, and completed emergency medicine residency training at the University of Illinois in Chicago in 1991. I am a board certified emergency physician, and have actively practiced clinical emergency medicine for twenty-five years. I completed a Masters in Public Health at the University of Illinois School of

Public Health, and completed a Fellowship in Clinical Research Effectiveness at the Harvard School of Public Health.

I have held administrative positions in emergency medicine as the Director of Clinical Operations at the University of Illinois Hospital Department of Emergency Medicine and I have worked for seven years at the Johns Hopkins Hospital, where I was Professor and Vice Chairman of Emergency Medicine. In that role, I provided clinical and administrative oversight to three Johns Hopkins University affiliated hospitals, including the Department of Emergency Medicine at the Johns Hopkins Hospital. I am the Chairman at Brigham and Women's Hospital, and a Professor of Medicine at the Harvard Medical School and the Harvard School of Public Health.

In addition to my domestic clinical experience, I have also worked as a humanitarian physician in several international wars, providing field medical care to sick and injured patients in active conflict areas such as Bosnia, Somalia, and Sudan. In this capacity, I had to frequently exercise my judgment as to the safety of the scene of an injured patient and assess the degree to which a patient may be safely accessed in order to provide emergency treatment and evacuation.

I am board certified in emergency medicine, and am a past examiner for the American Board of Emergency Medicine Oral Board Examination. I have worked in both private emergency departments and teaching hospitals, and actively train and supervise residents, medical students, pre-hospital providers and physician assistants.

My testimony in this matter conforms to the American College of Emergency Physicians policy statement on Expert Witness Guidelines for the Specialty of Emergency Medicine and with American Academy of Emergency Medicine Position Statement on Ethical Expert Conduct and Testimony.

**Materials Reviewed:**

At your request, I reviewed the following records and documents:

*Records:*

Incident Report: Bradenton Police Department
CSI Watts Photos and Officer Curry Photos
North Port Police Department Investigative Report
North Port Fire Rescue District Report
Written testimony (notarized) of Peter Madish
Sarasota County EMS records
Bayflight 2 Rescue records
Blake Medical Center Emergency Department records
Blake Medical Center surgical and admission records
West Florida Anesthesiology Consultants
Coastal Behavioral Healthcare, Inc
Centerstone (Manatee Glens) records

**Brief Summary:**

Mark Landon was, at the time of the event, a 47 year-old male who attempted suicide on July 20, 2014 by a self-inflicted laceration to his wrist. He had an altercation with his brother-in-law, and

then disappeared into a densely wooded area at dusk. His mother called police and EMS. The canine unit came to the scene, and the deployed dog found the patient and bit him on the torso. The patient suffered the consequences of an infected bite wound.

Written Statement by Peter Madish:

In a notarized written statement, Mr. Landon's brother in law, Peter Madish, noted that Mr. Landon has been "depressed, suicidal and drinking heavily for about a year. He has physically hurt himself several times within the past year. This has included hitting his head off of a granite countertop and cutting himself. Yesterday, I witnessed he had cut himself in the chest after drinking heavily. Today, I was outside of my garage and heard my mother in law yelling for me. I walked over to her house and saw her and Mark standing at the find end of the garage, she showed me his wrist where he cut himself and was bleeding, he was holding a pocket knife at his side. I ordered him several times to put the knife down; he would not. It was obvious he was heavily drinking and or was on something. I told him this BS has to end. He said, yeah, this is probably going to be the end." Mr. Madish then managed to wrestle the knife away from him. He further noted that "He then came out of the garage with another knife and was shouting obscenities at me" and then he "ran towards the woods."

North Port Police and EMS Response:

The North Port police responded to the call. They noted that his mother said her son, Mark, was mentally ill and had cut himself and fled into the brush between houses with a knife. He disappeared into in dense brush under darkening conditions. He was summoned by the police but refused to come out. They sent in the K9 Tomy to find the patient. The dog bit Mr. Landon on the right side of his abdomen. He was also noted to have sustained a self-inflicted wrist laceration and had ETOH on board and a history of depression.

North Port EMS responders were then called to the scene. They noted the following: "Upon arrival Rescue 81 staged for North Port PD to secure the scene. Rescue 81 was advised the patient was found in the woods on the street over from the dispatched address. Upon arrival at the location North Port PD advised the patient had fled into the woods upon PD's arrival and was taken down by a police K-9.Upon arrival at patient, the patient was supine on the ground with a visible large laceration to his left wrist and two puncture wounds to his abdomen."

North Port EMS stabilized the patient and transported him to the Bay Flight 2 Rescue Base.

Bay Flight 2 Rescue Unit Note

"The patient was brought to BF base by EMS. As reported by the NFR (North Port Responders), the patient attempted to take his own life by cutting his left wrist. The police were summoned to the patient's home. When they encountered the patient the patient field into the woods. A police K9 found the patient and bit the patient. The patient sustained a significant injury to the wrist, which appeared to include an arterial injury. The patient has sustained penetrating injures to his torso from dog biting. Upon BF2 contact with the patient, the patient was found to be obtunded with a GCS of 7." He was intubated, sedated and transported to Blake Medical Center.

Blake Medical Center: Emergency Department and Trauma Surgical Note

The patient was evaluated by the emergency department and trauma service, and was noted to have a multiple lacerations to the left wrist, and complete transection of the ulnar artery with brisk arterial bleeding and significant blood loss. He was noted to have also been bitten in the abdomen by a dog, and sustained abdominal laceration that did not appear to penetrate the abdominal cavity. The patient was noted to be in critical condition.

He underwent ligation of the ulnar artery, and exploration and washout of the dog bite, which was treated with packing and antibiotics. He ultimately suffered a wound infection from a penetrating abdominal bite wound that required additional surgical intervention.

**Opinions:**

Upon review of the medical records, reports from the accounts of the rescue and photos from the scene, I find that the action of the paramedics in awaiting law enforcement assurance that the scene was safe complied with the standard of care for pre-hospital care providers. I believe that Mr. Landon was suffering from a potential life threatening injury and also posed a potential threat to medical responders, and thus it was reasonable and appropriate for EMS providers to undertake appropriate precautions in accessing the patient in a safe and timely manner. My opinions are based on two major points, discussed as follows:

*1. It was reasonable to anticipate that this patient could be armed and dangerous and it was therefore not safe for paramedics to approach him blindly to initiate the medical response.*

The patient's presentation prior to his apprehension was such that it was reasonable for paramedics to allow law enforcement to secure the scene and assure that they could safety treat the patient. My opinion in this matter derives from my understanding that EMS providers commonly work with law enforcement to assure that a scene is secure and safe for civilian medical providers to approach and treat a patient. In this case, it was clear that the patient posed a threat to himself and possibly others. This was based on the fact that the patient may have been armed with a knife and was noted to be intoxicated and violent. The fact that EMS providers awaiting instructions from law enforcement before accessing the patient was appropriate.

*2. The patient's self inflicted arterial laceration constituted a potentially life threatening injury that required an immediate, but safe, assessment and treatment of the patient and evacuation from the scene to a trauma center.*

The photos of the scene, the medical records of the pre-hospital providers and the records from the emergency medical and trauma teams make it clear that the patient did indeed have a life threatening arterial injury that required immediate definitive treatment. This required urgent, but safe, evaluation and treatment of the patient at the scene.

**Summary:**

My opinions reflect my experience as a practicing clinician and as an educator of physicians, residents, students, paramedics and pre-hospital providers. My opinions are based on acceptable

standards of care in emergency medicine, and to a reasonable degree of medical probability.

Yours sincerely,

Michael VanRooyen, MD, MPH

Chairman: Brigham and Women's Hospital Department of Emergency Medicine
Professor: Harvard Medical School and Harvard School of Public Health
Director: The Harvard Humanitarian Initiative, Harvard University