UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK J. LANDON,

      Plaintiff,

v.                                           Case No: 8:15-cv-2272-T-36JSS

CITY OF NORTH PORT,

      Defendant.

_____/

## **O R D E R**

This matter comes before the Court upon Defendant's Motion for Summary Judgment (Doc. 49). In the motion, Defendant contends that there is no evidence regarding: (1) a constitutional violation due to excessive force; (2) a constitutionally improper failure to train, supervise or discipline; or (3) battery. Plaintiff Mark Landon ("Landon") responded in opposition to the motion (Doc. 57), to which Defendant replied (Doc. 65). The Court, having considered the parties' submissions, including deposition testimony, exhibits, affidavits and stipulated facts, and being fully advised in the premises, will now grant Defendant's Motion for Summary Judgment.

## I.    **BACKGROUND AND STATEMENT OF FACTS[1]**

Plaintiff filed this action against the City of North Port (the "City") for alleged violations of his Fourth and Fourteenth[2] Amendment rights under 42 U.S.C. § 1983.

### A.    **Events of July 20, 2014**

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including stipulated facts, affidavits, deposition testimony and exhibits.
[2] All claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Plaintiff wanted and intended to kill himself on July 20, 2014. Doc. 56.[3] He was depressed and irate. *Id.* In the early evening of July 20, 2014, Plaintiff's mother, Rose Landon, ("Mrs. Landon") discovered Plaintiff in the screened garage of the home that they shared at 4232 Renova Avenue. *Id.* She saw blood dripping from deep cuts on Plaintiff's wrist and began screaming. *Id.*

Plaintiff's brother-in-law, Peter Madish ("Madish"), lived next door at 4212 Renova Avenue. *Id.* Madish was in his garage when he heard Mrs. Landon scream and rushed over to where he could see Plaintiff through the Landons' screened garage door. *Id.* Madish testified that Plaintiff was standing approximately eight feet from the threshold of the garage and was holding a knife. *Id.* To Madish, he appeared to be under the influence of alcohol and/or drugs. *Id.*

Madish opened the screen door and entered the Landon garage where Plaintiff was still holding the knife. *Id.* Madish grabbed Plaintiff's arm and put him in a headlock. *Id.* During the struggle Mrs. Landon went inside, and from her landline, called 911. *Id.* She told the 911 operator that her son was trying to kill himself. *Id.*

The call went out to the City of North Port Police Department, ("NPPD") via radio and computer-aided dispatch. *Id.* The NPPD arrived at 4232 Renova Avenue (Mrs. Landon's home) at approximately 8:38 p.m. *Id.* Plaintiff does not remember his interaction with law enforcement and has no recollection of the dog bite. *Id.* In fact, Plaintiff does not remember having any contact with the NPPD on July 20, 2014. *Id.* His first recollection after the incident was being airlifted in a helicopter. *Id.*

Officer Dino Murges ("Murges") was the first officer to respond to 4232 Renova Avenue. *Id.* Officer Keith Bush ("Bush") was the next officer to arrive. *Id.* Officers Bush and Murges found Madish standing in the driveway of his home at 4212 Renova Avenue. *Id.* Madish told Officers

---

[3] Stipulation of Agreed Material Facts.

Murges and Bush that Plaintiff was intoxicated and had attempted suicide by cutting himself which left him bleeding badly. *Id.* Madish also told them that the Plaintiff had a knife and he described their struggle before he took the knife away. *Id.* Madish told the officers that Plaintiff grabbed another knife and fled between the two houses. *Id.* Mrs. Landon told Officers Murges and Bush that Plaintiff cut himself and was in an altercation with his brother-in-law who was trying to take his knife. *Id.* She stated that he then grabbed another knife and ran between the two houses into the back. *Id.* There was blood at the scene. *Id.*

Officer Bush was the only K-9 officer responding to the scene. *Id.* After noting the blood at the scene, he decided to initiate a track with his police dog, Tomy, to locate Plaintiff. *Id.* Officer Murges served as the back-up officer on the K-9 track to locate Plaintiff. *Id.* Officer Bush kept Tomy on a 15 foot lead during the track between the residences and into the wooded area. *Id.*

Officers Bush and Murges went into the wooded area. *Id.* Officer Bush first saw Plaintiff from approximately fifteen feet away and both officers immediately stopped. *Id.* Officer Bush issued several commands to Plaintiff to show his hands. *Id.* He also made multiple announcements to Plaintiff that he had a dog and that he would release the dog if Plaintiff did not show his hands. *Id.* Officer Murges drew his side arm. *Id.* Officer Bush gave Tomy the bite command. *Id.* Tomy bit Plaintiff. *Id.* The bite created two puncture wounds in Plaintiff's abdominal area. *Id.* Officers Bush and Murges ordered Plaintiff to stay down and to keep his hands out. *Id.*

Officer Bush recalled Tomy and the scene was secured; backup NPPD officers arrived in response to the call for assistance. *Id.* The three backup officers, Sergeant Mike Saxton ("Saxton"), Officer John McKinney ("McKinney") and Officer Stevie Marie Connell ("Connell") entered the woods after Officer Bush deployed and recalled Tomy. *Id.* Officers Saxton, McKinney and

Connell did not witness the apprehension or the bite. *Id*. They therefore cannot describe the specific circumstances that Officers Bush and Murges encountered. *Id.*

Plaintiff was searched, secured and received emergency medical care. *Id.* Officers McKinney and Connell provided cover as Officer Murges pulled Landon by his legs into the clearing. *Id.* Officer McKinney pulled his side arm but did not point his gun at Plaintiff and he secured his weapon after Plaintiff was patted down. *Id.* Officer Connell unholstered her taser gun as a precaution. *Id*. She pointed it at the ground, not at Plaintiff. *Id.* She never deployed it. *Id.* Officer Murges searched Plaintiff for weapons by patting him down before placing him on a gurney and removing him from the woods to be transported by helicopter for emergency treatment. *Id.* NPPD never recovered the knife. *Id.*

## B. Response to Resistance Policy and Training

At the time of the incident, Defendant had in place a Response to Resistance Policy, ("SOP 401.01"). *Id.* SOP 401.101 was designed to ensure that NPPD officers used "only that force reasonably necessary to effect lawful objectives." *Id.* SOP 401.101 specifically provides that NPPD officers *"will strive at all times to use the minimum amount of force necessary to gain control over a subject"* (emphasis in original). *Id.*

All NPPD officers, including those officers who responded to the July 20, 2014 incident, received training annually on the Force Guideline Flow Chart (the "Flow Chart") developed by the Florida Department of Law Enforcement ("FDLE") and the Criminal Justice Standards and Training Commission ("CJSTC"). *Id.* The Flow Chart is a guideline for officers in selecting effective, reasonable, and legally defensive actions in verbal and physical encounters. *Id.* As an individual increases the resistance level from verbal to physical, the officer may have to increase

the level of response until the resistance ceases and the officer is able to gain control of the subject. *Id.*

Anytime a NPPD police officer is involved in an incident involving response to resistance, the NPPD is required to document the response in a Response to Resistance ("RTR") report. *Id.* Officers Bush, Connell, McKinney and Murges completed RTR reports in connection with the July 20, 2014 incident. *Id.* The SOP 401.01 requires Sergeant Saxton to review the RTR reports at the end of his shift. *Id.* The RTR reports were then forwarded to Lieutenant Arsenault, who checked the reports for accuracy, completeness and compliance. *Id.*

### C.    K-9 Policy and Training

In July 2014, the City had in effect a Standard Operating Procedure on Training which established agency training programs. *Id.* SOP 501.01 required specialized training beyond basic law enforcement knowledge and skills for police dog handlers such as Officer Bush. *Id.* The City also had in effect a Standard Operating Procedure on Canines ("SOP 203.01") which established the procedures for the training, evaluation, and use of police dogs. *Id.* The function of the City's canine unit "is to provide a superior search capability while increasing safety and decreasing the time of search." *Id.* Officer Bush and Tomy, a Belgium Malinois, were trained as a K-9 team under SOP 203.01. *Id.*

### D.    Mentally Ill Guidelines and Training Policies

In July 2014 the City also had in effect Police Call Guidelines for Handling Mentally Ill Individuals (the "Call Guidelines"). *Id.* The Call Guidelines require that law enforcement officers take persons who appear to meet the criteria for involuntary examination under Florida Statutes §394 (the "Baker Act") into custody and to transport them to a receiving facility. *Id.*   The City trained all sworn law enforcement officers on the Call Guidelines. *Id.*

Plaintiff filed his Amended Complaint asserting three counts against the City: Count I for failure to train and/or supervise in violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; Count II for failure to discipline[4] in violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; and Count III for battery under Florida law.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most

---

[4]In the Eleventh Circuit, failure to train and failure to discipline are distinct and separate bases for liability. *See Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir. 1998) (failure to train) and *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1443 (11th Cir. 1985) (failure to discipline).

favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Anderson,* 477 U.S. at 252 (emphasis added). A party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. App'x 852, 858 (11th Cir. 2006).

## III.  DISCUSSION

### A.  Plaintiff's Affidavit is a Sham

Plaintiff filed the Affidavit of Mark Landon ("Landon Aff.") in opposition to Defendant's motion for summary judgment. Doc. 57-2 As an initial matter, Defendant contends that the Court cannot consider Landon's affidavit because it does not comply with the requirements of Federal Rule of Civil Procedure 56(c)(4). Doc. 65 at 2. Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Because Rule 56(c)(4) "limits the matter to be properly included in an affidavit to facts," each fact in the affidavit must derive from the affiant's personal knowledge. *Martin v. Rabco Leasing Inc*., No. 8:09-CV-2093-T-23TGW, 2010 WL 11507683, at *1 (M.D. Fla. Dec. 13, 2010). In *Martin*, the court noted the following:

> [U]ltimate or conclusory facts and conclusions of law, as well as statements made on belief or "on information and belief," cannot be utilized on a summary-judgment motion. Similarly, the mere re[-]argument of a party's case or the denial of an opponent's allegations will be disregarded: 'A party to an action cannot push the other party out of court by swearing he has no case.'

*Id.* (citing 10B WRIGHT, MILLER, KANE, FEDERAL PRACTICE AND PROCEDURE § 2738 (3d ed.); 27A FEDERAL PROCEDURE § 62:658)).

Defendant argues that Plaintiff lacks personal knowledge of the purported facts stated in the affidavit. Defendant submits that Plaintiff cannot assert that he was "unconscious" and yet have personal knowledge of events occurring while unconscious. Defendant also argues that Plaintiff cannot demonstrate that he is competent to testify as to precisely when, where, and why he became "unconscious" given his mental and physical state at the time. Further, Defendant contends that Plaintiff is clearly not competent to give the opinion that he was incapable of vocalization or physical movement during the encounter because he is not a medical expert. And, Defendant argues that Plaintiff's affidavit testimony directly contradicts his deposition testimony where he repeatedly testified that he was unable[5] to "remember" the police encounter.

A party may not submit an affidavit inherently inconsistent with earlier sworn testimony solely in an effort to create a factual dispute to resist a motion for summary judgment. A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction. *See Latimer v. Roaring Toyz, Inc*., 601 F.3d 1224, 1236-37 (11th Cir. 2010); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 (11th Cir. 2003); *Van T. Junkins and Associates, Inc. v. United States Industries, Inc*., 736 F.2d 656, 657-59 (11th Cir. 1984).

The Court will disregard Plaintiff's affidavit as it is a sham. Indeed, Plaintiff has not explained how or why he has suddenly remembered that he fell "next to the woods" and that he "passed out on the open ground next to a trail leading into the woods." Landon Aff. at ¶¶ 11, 12.

---

[5]In his deposition testimony, Plaintiff did not "remember" whether he told his brother-in-law he "was going to end it soon," Doc. 49-4 at 87:20-25, 128:8-16; could not "recall" whether he lay down on his back or his chest *id*. at 90:13-17; did not "remember" any contact with the NPPD on July 20, 2014, *id*. at 91:5-6, and did not "remember" police officers giving him commands, *id*. at 91:7-9, 130:8-16. He generally had "no memory" of the events of the police encounter, *id*. at 90:8-17; claims he was "dead," *id*. at 90:12; and only recalls "somebody in a (medevac) helicopter…rubbing real hard on [his] chest." *Id*. at 90:21-22, 92:8-10.

He does not explain how he was unconscious, but yet remembers that he "did not attempt to roll over" onto his side when Officer Bush commanded him to show his hands. *Id.* at ¶ 15. Nor does he explain how he knows that his movements at the time, if any, were "not due to [his] own volition." *Id.* Plaintiff neither explains when he refreshed his memory, nor how he recalls so many details when he claims he was unconscious during the encounter. The Court cannot rely on Plaintiff's self-serving contradictory affidavit in opposition to Defendant's motion for summary judgment under these circumstances to create a genuine issue of material fact. And because the affidavit is not based on personal knowledge, fails to set out facts that would be admissible in evidence, and fails to show that Plaintiff is competent to testify on the matters stated; the Court will not consider it. *See* Fed. R. Civ. P. 56(c)(4).

## B. The Dog Bite Was Not Excessive Force

Plaintiff sues the City for having a custom and/or policy that fails to: 1) train NPPD officers on proper use of force and 2) discipline its officers for use of excessive force. In order to impose liability on the City under Section 1983, Plaintiff must prove that: (1) he actually suffered a deprivation of his constitutional rights; and (2) the constitutional violation occurred as a result of a policy or custom of the City. *See Collins v. City of Harker Heights,* 503 U.S. 115, 120 (1992).

Plaintiff contends that he actually suffered a deprivation of his constitutional rights under the Fourth Amendment when Defendant's officers responded to his home and used excessive force. To assert a violation of the Fourth Amendment for the use of excessive force, Plaintiff must demonstrate that (1) a seizure occurred and (2) the force used to effect the seizure was unreasonable. *Troupe v. Sarasota County, FL,* 419 F.3d 1160, 1166 (11th Cir. 2005). The parties only address the second prong of this test. As such, the Court will assume that no dispute exists as to the first prong, i.e., that a seizure occurred.

The Fourth Amendment's freedom from unreasonable searches and seizures includes the right to be free from excessive force during a criminal apprehension. *Graham v. Connor,* 490 U.S. 386, 394-95 (1989). In determining whether the officers' force was reasonable, the Court must determine "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Lee v. Ferraro,* 284 F.3d 1188, 1197 (11th Cir. 2002) (citation omitted). Under *Graham,* courts must determine the "objective reasonableness" of a seizure by balancing the "nature and quality of the intrusion" against the "countervailing governmental interest at stake." 490 U.S. at 396.

Therefore, "[u]se of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' " *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham,* 490 U.S. at 396). A constitutional violation occurs when the officer's use of force is 'objectively unreasonable' in light of the totality of the circumstances at the time the force is used. *Graham,* 490 U.S. at 396. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish,* 441 U.S. 520, 559 (1979), "its proper application requires careful attention to the facts and circumstances of each particular case." *Graham,* 490 U.S. at 396. When determining the government's interest, the Court must consider factors that include: 1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Priester v. City of Riviera Beach, Fla.,* 208 F.3d 919, 924 (11th Cir. 2000) (citing *Graham,* 490 U.S. 396).

Here, Plaintiff argues that all of the *Graham* factors weigh in his favor. First, Plaintiff maintains that he did not have a criminal history and had not committed any crime. Second,

Plaintiff contends that Defendant's officers released the dog to bite him even though he posed no immediate threat to the officers' safety. Plaintiff argues that he could not have posed a threat to the officers' safety since he was already on the ground and was only wearing his boxer shorts. And finally, Plaintiff submits that he was not resisting arrest and was not attempting to evade arrest.

The facts of this case do not fit neatly within the *Graham* framework because Plaintiff was neither the suspect of a crime nor under arrest at the time Tomy bit him. Although limited in its application, the *Graham* framework guides the Court's evaluation of the force used in this case. *See e.g., Mercado v. City of Orlando*, 407 F.3d 1152, 1157 (11th Cir. 2005) (ultimately finding that defendants violated suicidal subject's Fourth Amendment rights when "alternative" actions, such as utilizing a crisis negotiation team, were an available means of resolving the situation and noting that the subject had not made any threatening moves toward himself or the officers). Nevertheless, in examining the "nature and quality of the intrusion," the Court notes that a police dog bite in general, and especially one that requires hospitalization, is not a minor intrusion on a free citizen. The force used in this case was severe enough to require hospitalization, and was complicated by an infection. As such, the Court must weigh this intrusion against the governmental interest at stake.

When determining the government's interest, the Court must consider three factors. As to the first *Graham* factor, it is impossible for this Court to measure the "severity of the crime" at issue since Florida does not recognize attempted suicide as a crime. *Krischer v. McIver,* 697 So. 2d 97, 100 (Fla. 1997). Although not criminal in nature, law enforcement must address a suicidal threat with the utmost urgency to protect the lives of the person threatening suicide, and those around them. Indeed, the Eleventh Circuit and other district courts have frequently found force necessary and reasonable to apprehend suicidal citizens. *See Oaks v. Anderson*, 494 Fed. App'x

35, 38 (11th Cir. 2012) (affirming dismissal of excessive force claim where law enforcement officers were addressing an emotionally distraught man who had threatened suicide and was likely to have a gun in his vehicle); *Kesinger ex rel Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1249-1250 (11th Cir. 2004) (concluding that plaintiff had not established that force was objectively unreasonable where deputy shot and killed a suicidal pedestrian attempting to cause a motor vehicle to hit him on an interstate highway); *Otero v. Indico*, No. 8:10-cv-1849-T-27TGW, 2012 WL 4478999, at *4 (M.D. Fla. Sept. 28, 2012) (finding use of force objectively reasonable when officer could not see plaintiff's hands and/or know if plaintiff was armed).

Moreover, Florida law recognizes a compelling interest in preventing suicide. *Mercado*, 407 F.3d at 1157. As such, "[a] reasonably perceived imminent threat of suicide is obviously a matter of life and death, and therefore a serious matter calling for immediate action on behalf of the police officers at the scene" even if, as here, an arrest is not the ultimate goal[6] of the apprehension. *Martinez v. Palm Bay Police Department*, 6:04-cv-1819-ORL-18JGG, 2006 WL 1933812, *7 (M.D. Fla. July 11, 2006) (finding use of force objectively reasonable when officers forcibly apprehended a reportedly suicidal juvenile who was perceived to be fleeing towards a canal).

As to the second *Graham* factor, the Court must consider to what extent the Plaintiff placed himself or others in danger. The second factor clearly weighs in favor of the Defendant. It is undisputed that Plaintiff posed a real and immediate threat to himself when he severely wounded himself then fled into the woods bleeding heavily. Indeed, when Officers Bush and Murges first

---

[6]The City's guidelines for handling mentally ill individuals required law enforcement officers to take into custody persons who appear to meet the criteria for involuntary examination under the Baker Act. Doc. 56 at 5.

located Plaintiff, they thought that Plaintiff was in possession of a knife with the intention of killing himself. Madish and Mrs. Landon told them that Plaintiff fled into the wooded area behind his mother's home and was bleeding badly. Doc. 49-1; Bush Depo. at 58:2; 22-59:12; Doc. 49-10, Murges Depo. at 13:10-14. They also told the Officers that Plaintiff grabbed another knife and ran between the two houses into the back. Doc. 56. Given these facts, the Officers reasonably believed that Plaintiff was not only a danger to himself but to others as well. Indeed, the "reasonableness" standard makes allowance for the fact that an officer on the scene is "often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham,* 490 U.S. at 397. Officer Bush's use of the dog bite was a less than lethal method to apprehend Plaintiff and prevent him from causing further harm. *See Bell v. Irwin*, 321 F.3d 637, 639-640 (7th Cir. 2003) (noting that police were justified in using "less lethal" bean-bag rounds on the plaintiff who threatened to blow up his home by igniting propane and kerosene tanks outside his home). The second factor weighs in favor of the Defendant.

As to the third *Graham* factor, the Court must consider whether Plaintiff was actively resisting arrest. The third factor also weighs in favor of the Defendant. It is undisputed that, Plaintiff did not comply when Officer Bush gave him repeated commands to show his hands. In addition, the undisputed facts establish that Officer Bush warned the Plaintiff that failure to comply would result in the release of the police dog. At the time Officer Bush gave the command for the Plaintiff to show his hands, both officers reasonably believed that Plaintiff was armed.[7] And because suicidal subjects sometimes make erratic moves that can jeopardize the safety of the

---

[7] Officers Bush and Murges testified that Landon was concealed in the palmetto bushes and that in response to commands to show his hands, he actually rolled away from them and further concealed his hands. Bush Depo. at 62:12-13; Murges Depo. at 16:8-12.

officers on the scene, the officers reasonably believed that Plaintiff was a threat to himself and others. Officer Bush's use of force was not objectively unreasonable under these circumstances.

Plaintiff relies on *Chew v. Gates*, 27 F.3d 1432, 1442 (9th Cir. 1994) in support of his argument that the force used here was excessive. The Court is not persuaded by its reasoning. In *Chew*, the Ninth Circuit concluded that there was no articulable basis for believing that the suspect was armed or that he posed an immediate threat to anyone's safety. *Id*. at 1441. The officer initially stopped Chew for a traffic violation. *Id*. at 1442. Before he fled the officer, he produced his driver's license, retrieved cigarettes and a lighter from his car, lit the cigarette and talked to the officer for a short time. *Id*. Nothing about Chew's behavior or appearance gave the officer cause to search him during the detention. Chew hid in a scrapyard for an hour and a half quietly, and the facts did not suggest that he engaged in any threatening behavior at any time during the police encounter or shortly before it. *Id*. In contrast, Landon threatened to commit suicide and took affirmative steps towards completing that task. He fought with his brother-in-law, secured another knife, and ran into the woods while bleeding profusely. Officers Bush and Murges had a compelling reason to believe that he would hurt himself, and possibly them as well, when he refused to follow their orders.

As for the two Florida district court cases upon which Plaintiff relies, they are also distinguishable. In *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1376 (S.D. Fla. 2013), the deposition of one of the plaintiffs stated that they immediately put their hands up when ordered and they made no furtive movements. But the officers' testimony was that the plaintiffs did not comply and one of them, who was ultimately fatally shot, dug into his waistband. This testimony presented a disputed issue of material fact precluding summary judgment. Here, the Court will not consider Plaintiff's affidavit, therefore any dispute created by it is not genuine.

In *Salvato v. Blair*, 5:12-CV-635-OC-10PRL, 2014 WL 1899011, at *8 (M.D. Fla. May 12, 2014), *aff'd sub nom. Salvato v. Miley*, 790 F.3d 1286 (11th Cir. 2015), the court determined that there was no evidence of a threat of physical harm to anyone before or during plaintiff's encounter with law enforcement. The initial encounter was an investigatory stop, and plaintiff did not resist at any time although he did not immediately comply with the officers' order. After being shot by one officer, the other officer discharged his taser 12 times on the plaintiff, several of which were after the plaintiff was handcuffed. The court found that it could not conclude as a matter of law that the use of force was objectively reasonable. In contrast, the encounter here involved a threat of physical harm to Landon and possibly the officers. And the amount of force used in this case was less, although it led to further medical complications due to the infection.

### C.    Expert Opinions[8]

Plaintiff offers Kyle Heyen as an expert on the use, training and discipline of K-9s and their handlers. Doc. 57-6.[9] He has worked with police dogs for many years. *Id*. at 2-4. Heyen opines that Officer Bush used excessive force when he commanded Tomy to bite Landon. *Id*. at 19, 28. He bases this opinion, in part, on statements and reports prepared by the officers on the scene. *Id*. at 8-15. Essentially, he concludes that because Landon did not pose a threat to the officers or engage in active resistance, Officer Bush's use of Tomy to bite him was excessive. *Id*.

---

[8] Pending before the Court are Defendant's Motion in Limine to Exclude Plaintiff's Proposed Expert Kyle Heyen (Doc. 46) regarding his opinion on the use, training, and discipline of K-9s and their handlers and Defendant's Motion in Limine to Exclude Plaintiff's Proposed Expert Walter Zalisko (Doc. 47) regarding his opinion on various issues associated with the City's liability. The Court's ultimate determination of summary judgment in favor of the City moots these motions. Nonetheless, given that Plaintiff relies upon the reports in its opposition to the motion for summary judgment, the Court will assume, without deciding, that the experts are qualified and their opinions are admissible for purposes of its analysis. *See Btesh v. City of Maitland, Fla.*, 6:10-CV-71-ORL-19DAB, 2011 WL 3269647, at *41 n. 21 (M.D. Fla. July 29, 2011), *aff'd sub nom. Btesh v. City of Maitland, FL*, 471 Fed. Appx. 883 (11th Cir. 2012).
[9] Kyle K. Heyen's Expert Report.

at 19; Heyen Dep. 146:44-147:6.[10] He points to the fact that Landon was only wearing underwear, had no pockets or a jacket in which to hide a weapon, no one found a knife on him or in the area where he was apprehended, and five officers and a police dog were surrounding him. Doc. 57-6 at 11, 17.

But Officers Bush and Murges stated that Landon was concealing his hands and he actively rolled away during the encounter. *Id*. at 9, 12-13; which Heyen conceded is "resistance" when it is an intentional act. Heyen Dep. 147:14-20. He also notes that resistance would "put law enforcement in a heightened state of awareness and might lead to an escalation of force." *Id*. at 13. He ultimately concludes that Landon's actions, if any, were a result of involuntary motion. *Id*. at 14 ("[Due to blood loss Plaintiff was probably unable to follow commands, screamed at him by several officers, over the top of a barking dog."). And he concludes that Officer Bush used excessive force when he commanded Tomy to bite Landon. *Id*. at 28.

Plaintiff also offers the expert testimony of Walter Zalisko who opines, in part, that Officer Bush's use of Tomy under these circumstances was unjustified. *See* Doc. 57-8[11] at 19-26; Zalisko Dep.[12] at 57:6-7. He bases this opinion on his experience and the officer reports. *Id*. at 57:20-58:5. Like Heyen, he concludes that Landon was not a threat when the officers encountered him because he was "merely passively resisting," "semi-conscious" and "unable to understand what the officers were instructing him to do." Doc. 57-8 at 15. He attributes his opinion regarding Landon's state of mind due to Landon's loss of blood from the self-inflicted wound. *Id*. But he has no medical training, education, or experience that would render him capable of assessing Landon's physical condition due to blood loss. *See generally* Doc. 57-6 at 2-5.

---

[10] Videoconference Deposition of Kyle Heyen, Doc. 57-10.
[11] Report and Opinions of Walter Zalisko Police Chief (Ret) and Police Consultant
[12] Deposition of Walter Zalisko Doc. 57-9.

Plaintiff summarizes the experts' opinions on the use of excessive force as concluding that "lesser force could have been used," Doc. 57 at 7; and that Zalisko indicated that instead of the K-9 bite, the officers should have used their baton to try to wake Landon because they presume Landon was "merely lying on the ground" and "semi-conscious." *Id.* (citing Zalisko Dep. at 69:2-9).

Heyen and Zalisko's opinions about Officer Bush's decision to instruct Tomy to bite and release Landon do not create a genuine issue of material fact regarding the reasonableness of Officer Bush's use of force on Landon. When judging the use of force by a police officer, a "standard of reasonableness at the moment applies." *Graham*, 490 U.S. at 396 ; *see also Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 407 (6th Cir. 2007) (disregarding the events occurring "in the hours and minutes leading up to" the use of force as discussed in plaintiff's expert's opinion and instead focusing on the "split-second judgments made immediately before the officer used allegedly excessive force" (internal quotation and citation omitted)); *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993) (scrutinizing "only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment" because the "Fourth Amendment prohibits unreasonable seizures, not unreasonable or ill-advised conduct in general"); *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991) (holding that the objective reasonableness test for excessive use of deadly force in *Graham* requires focus on the very moment the officers make the "split-second judgments" and not on the events leading up to the time immediately prior to a shooting); *Sherrod v. Berry*, 856 F.2d 802, 805–06 (7th Cir. 1988) (stating that in an excessive force case courts should look to the split second before the officer had to decide what to do).

The experts' testimony that Officer Bush should have employed different police tactics or techniques which possibly could have prevented the biting of Landon injects impermissible

hindsight into the analysis and does not, by itself, permit a finding that Officer Bush's use of force was objectively unreasonable under the circumstances at the moment he released Tomy. *See Graham,* 490 U.S. at 396 (requiring courts to judge the "reasonableness of a particular use of force ... from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." (internal quotation marks and citation omitted)).

Moreover, Heyen's statements about Officer Bush's use of a specific release technique, which potentially made the bite injury worse, sound in negligence. Docs 57-6 at 14-15, 19. And negligent conduct alone cannot establish an excessive force claim under Section 1983. *See Ansley v. Heinrich*, 925 F.2d 1339, 1344 (11th Cir. 1991) ("[N]egligent conduct alone [cannot] form the basis of a section 1983 claim premised on the fourth amendment.").

And the experts' assessments of the threat posed by Landon to Officers Bush and Murges do not account for the totality of the circumstances affecting Officer Bush at the moment he released Tomy. The experts noted that Landon was not being violent, was bleeding profusely, not resisting or otherwise threatening the police. Doc. 57-6 at 11, 17, 19; Doc. 57-8 at 9. And Zalisko concluded that he either did not hear the commands or was unable to physically comply with them. Doc. 57-8 at 15. But the experts assume facts that the Court has rejected, i.e., that Landon did not hear the commands or warning and that he did not roll over on his own volition.

Further, although Landon's failure to follow the commands in isolation may not have justified the use of this much force, Landon reasonably posed a threat of serious physical harm to himself and Officers Bush and Munges at the moment Tomy bit him. The information Officer Bush had at the time included the call to the NPPD regarding an attempted suicide, Landon's visible injury to himself, Landon's scuffle with his brother-in-law over a knife, Landon's possession of another knife before he went into the woods, and his failure to obey police commands

with his hands out of view and hidden. *See McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1246 (11th Cir. 2003) (finding a reasonable use of deadly force where the officer had probable cause to believe that the suspect earlier had committed a violent act, could reasonably perceive that the suspect posed an imminent threat of violence to the officer and other bystanders, and noted that the suspect continued to ignore repeated commands to drop a walking stick held in his hand).

In summary, based on the following undisputed facts regarding Plaintiff's suicide attempt; self-inflicted bleeding wound; physical altercation with a family member; flight to a wooded area; possession of a knife; failure to show his hands when repeatedly commanded to do so; and being warned about the imminent dog release, Officer Bush's use of force was not objectively unreasonable. It was likely, under the circumstances, that Landon may have seriously injured Officer Bush, Murges or himself. *See Menuel v. City of Atlanta*, 25 F.3d 990, 995 (11th Cir. 1994) ("From the vantage of an officer whose life is jeopardized, a potential arrestee who is neither physically subdued nor compliantly yielding remains capable of generating surprise, aggression, and death."). As such, the release of the dog was reasonable under the totality of the circumstances.

Because Officer Bush's release of Tomy to bite Landon did not violate Landon's Fourth Amendment rights under the facts viewed in the light most favorable to Plaintiff, the City is entitled to summary judgment. Here, no constitutional violation occurred. And absent a constitutional violation, Plaintiff's *Monell* claims against the City fail. Therefore, summary judgment will be granted in favor of Defendant on Counts I and II, as no genuine issues of material fact exist.

### D. Remaining State Law Claim

The Court has disposed of the federal claims and only a Florida law claim remains.[13] The resolution of this claim will require analysis of Florida law. The Supreme Court has advised that

---

[13]Count III of the Amended Complaint asserts a state law claim against the City for battery.

"in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). Therefore, the Court will decline to exercise its supplemental jurisdiction over this remaining claim. *See* 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."). This claim will be dismissed without prejudice to being refiled in an appropriate state court. [14]

IV.    **CONCLUSION**

No violation of Plaintiff's constitutional rights occurred by the Defendant. Therefore, Plaintiff's claims for failure to train and/or supervise, Count I, and failure to discipline, Count II cannot be established. Defendant is, therefore, entitled to judgment in its favor as a matter of law on these counts.

**Accordingly, it is ORDERED AND ADJUDGED**:

1.    Defendant's Motion for Summary Judgment (Doc. 49) is **GRANTED** as to Count I and Count II.

2.    Count III is **DISMISSED** without prejudice.

3.    The Clerk is directed to enter judgment in favor of Defendant on Counts I and II.

---

[14] Although Plaintiff's state law claim is subject to a four year statute of limitations; *see* § 95.11(3)(o), Fla. Stat.; the statute of limitations period is tolled when a plaintiff files claims before the four-year limitations period has run. 28 U.S.C. § 1367(d) (requires state statutes of limitation to be tolled for the period during which a ... cause of action is pending in federal court as well as 30 days after the claim is dismissed). *See also Simon v. Celebration Co.*, 883 So. 2d 826, 830 (Fla. 5th DCA 2004).

4.      The Clerk is further directed to terminate all pending motions and deadlines and close this case.

**DONE AND ORDERED** in Tampa, Florida on December 14, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any