[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10108
Non-Argument Calendar

_____

D.C. Docket No. 8:15-cv-02272-CEH-JSS

MARK J. LANDON,

                                                            Plaintiff - Appellant,

versus

CITY OF NORTH PORT,

                                                            Defendant - Appellee,

KEVIN VESPIA,
in his Official Capacity as Chief of Police of North Port Police, et al.,

                                                            Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 13, 2018)

Before MARTIN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

When North Port Police Department ("NPPD") officers found Mark Landon in the woods, he was naked except for his underwear, suicidal, bleeding heavily from a self-inflicted wound, and laying on the ground. Concerned for their safety due to reports that Landon possessed a knife, the officers decided not to approach him. Instead, they ordered a K-9 dog to bite him. The bite wounds later became badly infected and required months of medical treatment and surgical intervention. After this encounter, Landon sued the City of North Port (the "City"), alleging violations of his Fourth Amendment rights under 42 U.S.C. § 1983 based on the officers' use of excessive force.

The district court granted the City's motion for summary judgment. The court found there was no genuine dispute that the officers' use of force was reasonable and therefore not excessive. After careful review, we reverse and remand for further proceedings.[1]

## I.

---

[1] We sua sponte grant rehearing in this case, withdraw the previous opinion filed on September 10, 2018 and appearing at — F. App'x —, 2018 WL 4293324 (11th Cir. 2018), and issue this opinion in its place. See, e.g., Mockeviciene v. U.S. Att'y Gen., 237 F. App'x 569, 570 (11th Cir. 2007) (per curiam) (unpublished). Landon's petition for rehearing en banc is therefore denied as moot. In addition, the previous opinion may not be cited by or to this court or any district court of the Eleventh Circuit.

During the early evening hours of July 20, 2014, Landon was depressed and suicidal. He entered the screened garage of the home he shared with his mother, grabbed a knife, and slashed his left wrist multiple times. The cuts completely transected his ulnar artery. His mother, Rose Landon ("Mrs. Landon") discovered him soon thereafter in the garage. She realized Landon was bleeding heavily from the deep cuts he made to his wrist, and began screaming.

Her screams attracted the attention of Landon's brother-in-law, Peter Madish, who lived next door. Sensing something was wrong, he rushed over to her garage and saw an undressed Landon standing some distance away with a knife in his hand. Madish thought Landon was under the influence of either drugs or alcohol. Madish then went into the garage, put Landon in a headlock, and wrestled the knife away. After losing control of the knife, Landon fled. In the meantime, Mrs. Landon dialed 9-1-1 and informed the operator that her son was trying to kill himself.

Officers Dino Murges and Keith Bush were dispatched to the scene. When they arrived, they found Madish standing in the driveway of his home. From him, the officers learned that Landon was suicidal, likely intoxicated, and bleeding badly from a self-inflicted injury. Madish also informed the officers that Landon grabbed another knife before fleeing. Mrs. Landon told the officers a similar story. The officers separately observed blood in the driveway of the Landon home and

garage, with a significant amount of blood on the concrete outside. Based on their observations and the statements of both Madish and Mrs. Landon, Officers Murges and Bush knew Landon was "bleeding profusely."

Officer Bush, a K-9 officer, suggested using his K-9 dog, Tomy, to track Landon down. Landon was not suspected of a crime, but the officers wanted to locate him to make sure he was okay. Officer Murges agreed to serve as backup. Using Tomy, the officers eventually tracked Landon to a wooded area, where he lay on the ground, partially concealed by a bush and clad in only his underwear. The officers came to a stop approximately fifteen feet away from Landon and ordered him to show his hands. Officer Murges also immediately drew his firearm and trained it on Landon.

The parties dispute what happened next. Officers Bush and Murges testified at their depositions that Landon was laying on his side and rolled further into a fetal position after being ordered to show his hands. The officers warned Landon they would release a K-9 dog on him if he did not comply with their demands. Officer Murges additionally testified that Landon responded at one point by yelling or screaming "Oh," and something else that Murges "couldn't exactly hear." In contrast, Officer Bush testified that Landon never said anything or made any noise in response to their commands. Both Officer Murges and Officer Bush acknowledged that Landon never made any movements towards them, and Officer

4

Murges recalled that Landon was "obvious[ly]" bleeding.  Nonetheless, Officer Murges thought Landon was coherent and actively concealing himself from the officers.  Officer Bush also thought Landon was actively resisting commands.

Landon, on the other hand, says he never responded to the officers and was unconscious at the time.  Although he has no memory of the incident, he introduced expert testimony from Dr. Michael VanRooyen, who opined that Landon's likely Glasgow Coma Scale ("GSC") score of 7 at the time meant Landon was "only minimally responsive" and capable of non-responsive movement and/or groaning and moaning.  Dr. VanRooyen testified that he did not think Landon's GSC score was affected by the dog bite.  Several other officers who arrived at the scene after the bite gave deposition testimony that Landon was unresponsive, motionless, and bleeding.

The parties do not dispute that Officer Bush gave Tomy the command to bite Landon.[2]  In response, Tomy sank his teeth into Landon's abdomen and pulled Landon onto his back, at which point Officer Bush realized Landon was unarmed and ordered Tomy to release Landon.  Neither is it disputed that Tomy's bite punctured Landon's abdomen in two places and that no knife was ever located in the area Landon was found.  Although Landon ultimately received medical

---

[2] Officer Bush explained at his deposition that deploying a taser was not an option because the wires would be obstructed by the brush.  He also testified that he was afraid to approach Landon out of fear he would be stabbed.

5

attention for the injuries to his wrist and abdomen, the bite punctures became infected and required extensive medical care.

Landon sued the City in the United States District Court for the Middle District of Florida on September 30, 2015.  His amended complaint asserted two claims under 42 U.S.C. § 1983 based on excessive force in violation of the Fourth Amendment: failure to supervise and failure to discipline.  His complaint also included a claim of battery under Florida state law.  After discovery, the City moved for summary judgment.

Landon responded in opposition to the City's motion for summary judgment.  Included with his responsive pleading were numerous exhibits in support of his opposition, including a transcript of Dr. VanRooyen's deposition, Dr. VanRooyen's expert report, and a new affidavit from Landon stating that he did not roll over on his side when Officer Bush ordered him to show his hands.  The district court granted summary judgment in favor of the City.  The court first rejected Landon's new affidavit as a sham.  Landon previously gave deposition testimony that he was unconscious during the encounter with the officers and could remember nothing of what transpired.  Based on this testimony, the court concluded Landon was not competent to testify on the matters included in the new affidavit because he could not have had personal knowledge of what took place during the time he was unconscious.

The district court next found that Landon failed to point to a genuine issue of material fact about whether the officers used excessive force when Officer Bush ordered Tomy to bite Landon. Because there can be no municipal liability under 42 U.S.C. § 1983 absent a constitutional violation (in this case, excessive force), the district court granted the City summary judgment on Landon's failure to train and failure to discipline claims. Without any federal claims to adjudicate, the district court declined to exercise supplemental jurisdiction over Landon's remaining state battery claim and dismissed that claim without prejudice.

Landon timely appealed.

## II.

We review a district court's decision to exclude an affidavit filed in opposition to a motion for summary judgment for abuse of discretion. See Reese v. Herbert, 527 F.3d 1253, 1265 (11th Cir. 2008); McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002). We review de novo a district court's grant of summary judgment, viewing the facts and drawing all reasonable inferences in favor of the opposing party. Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009). Summary judgment is only appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Landon first argues the district court abused its discretion when it excluded his affidavit from consideration as both inconsistent with his deposition testimony and not based on personal knowledge. This argument is without merit.

Landon stated at his deposition, "As far as I know, I was unconscious, so I don't know what I could have done." When pressed to explain what he meant, Landon admitted it was fair to say he "didn't know what [he] did" in the woods. He also repeatedly testified that he could not remember what happened after he ran into the woods. He explained that his memory was foggy because he was "pretty much" "check[ed] out" and "dead" after he fled the garage. Landon even reiterated in his new affidavit that he never regained consciousness during the encounter with Officers Bush and Murges.

Federal Rule of Civil Procedure 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The district court did not abuse its discretion when it found, based on Landon's deposition testimony, that he could not have possessed the personal knowledge required to make the claims he did in his new affidavit. Cf. DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012) (expressing concern that the parents' deposition testimony was inadmissible because they did not have "personal knowledge of what occurred,"

8

and therefore may not have been competent to testify to the truth of what happened to their son). As the district court observed, Landon could not have been both unconscious and able to recall that he never "attempt[ed] to roll over onto his side when Officer Bush commanded him to show his hands." Thus, Landon necessarily lacked personal knowledge of his movements, and the district court's exclusion of his affidavit was proper.

## IV.

We agree with Landon, however, that the district court erred when it granted summary judgment for the City on his 42 U.S.C. § 1983 claims.

Plaintiffs seeking to hold a municipality liable for constitutional violations under § 1983 must prove first, that there was a constitutional violation, and second, that the violation was a product of the municipality's "official policy" or "unofficial custom or practice." Grech v. Clayton Cty., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc) (quotation marks omitted). Here, the district court did not reach the second inquiry because it found Landon failed to introduce a genuine dispute of material fact that the officers violated his constitutional rights by engaging in excessive force. The district court's assessment of the evidence missed the mark. Our review of the record reveals a genuine dispute of material fact as to what information the officers had when Officer Bush ordered Tomy to bite Landon. This, in turn, implicates the core question of whether the officers' use

of force was objectively reasonable. As a result, the district court's grant of summary judgment to the City was not appropriate.

Where, as here, there is a claim of excessive force under the Fourth Amendment, we must ask whether the officers' actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Garczynski, 573 F.3d at 1166–67 (quotation marks omitted) (quoting Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989)). An officer's good intentions do not "make an objectively unreasonable use of force constitutional." Graham, 490 U.S. at 397, 109 S. Ct. at 1872. Although we "must resist the temptation to judge an officer's actions with the 20/20 vision of hindsight," Garcynski, 573 F.3d at 1167 (quotation marks omitted), we are not required to close our eyes to evidence that circumstances at the time may have rendered an officer's actions objectively unreasonable. Instead, we must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."³ Graham, 490 U.S. at 396, 109 S. Ct. at 1872.

---

³ "Because this situation does not involve a criminal arrest, our facts do not fit neatly within the Graham framework." Mercado v. City of Orlando, 407 F.3d 1152, 1157 (11th Cir.

The City urges us to affirm the district court's ruling because it was "hardly unreasonable for Officer Bush to deploy Tomy" when the officers thought Landon possessed a knife and was actively resisting commands. This argument, however, fails to fully credit Landon's evidence, which we are required to do on summary judgment. Although it is uncontested that Officers Bush and Murges thought Landon was armed with a knife when they found him in the woods, Landon introduced evidence that they were also aware he was clad in nothing more than his underwear and bleeding profusely from a self-inflicted wound. In addition, Landon was not suspected of committing a crime. Last, and drawing all inferences in Landon's favor, there is evidence that even if the officers thought Landon possessed a knife, they could not have reasonably thought he was in any condition to use the knife. This evidence is sufficient for Landon's case to survive summary judgment.

To begin, there is substantial evidence suggesting that the officers could not have reasonably thought Landon posed an immediate threat to their safety or that of others. First, the officers were aware Landon was bleeding profusely. The City asserts that "the officers . . . had no way of discerning how much blood Landon had lost." But it matters little that neither Officer Bush nor Murges could have known that Landon had cut through his artery. Both officers testified they

---

2005). Nonetheless, the Graham factors help guide our inquiry as to whether the officers' use of force in these circumstances was objectively reasonable. See Mercado, 407 F.3d at 1157.

observed blood on the scene. Beyond that, Officer Murges testified there was blood in the driveway, the garage, and the concrete outside, and that it was "clear[]" from the evidence Landon was "bleeding profusely." It was also "obvious" to Officer Murges that Landon was still bleeding when the officers found him in the woods.

The officers further acknowledge that Landon never made any movements toward them, and to the extent he moved, it was only to curl further into a "fetal" position. Officer Bush also testified no one informed him Landon "was trying to harm anyone other than himself" and that Landon was not suspected of committing a crime. Viewing the evidence in the light most favorable to Landon and drawing all inferences in his favor, the officers ordered a dog to bite Landon from a distance of fifteen feet away even though Landon posed no threat to them and, indeed, appeared significantly incapacitated due to substantial blood loss. Landon did not physically move toward the officers and, based on Officer Bush's testimony, offered no verbal resistance whatsoever. In fact, Landon may have made no "verbal noises," much less statements, at all.

Neither is it clear from the record that Landon was capable of rolling over and curling into himself, as the officers recounted. Dr. VanRooyen testified Landon's GSC score was 7 when he received medical assistance, meaning he was

only "minimally responsive."[4]  Dr. VanRooyen also testified he did not think Landon's GSC score was different before the dog bite, and that someone with a GSC score of 7 could "appear to be conscious but obtunded," due to his or her ability to move non-purposefully.  Whether that non-purposeful movement could include curling into a fetal position remains an open question.  However, two officers who arrived at the scene later testified that Landon was unresponsive and motionless when they saw him.  On a motion for summary judgment, it is reasonable to infer from this evidence that Landon may not have moved at all in response to the officers' commands, and that even if he had, his movements would have appeared lethargic or deadened.  In other words, while the officers may have had reason to think Landon was armed with a knife, there is also evidence that they could not have reasonably thought Landon was in any condition to use the knife.

In addition, Landon's expert, Kyle Heyen, opined in his report that the officers could have used a number of less forceful means to secure Landon.[5]  According to Heyen, the officers could have moved closer to Landon or attempted to change their position to get a better view of his face and hands rather than immediately resorting to a dog bite.  Heyen also said the officers could have waited

---

[4] According to Dr. VanRooyen, the GSC scale ranges from 3 ("utterly unresponsive") to 15 ("completely alert").

[5] Heyen is a former police officer and law enforcement canine trainer, who has testified in a number of cases.  The district court assumed for purposes of summary judgment that Heyen was qualified and his report and deposition testimony admissible, as do we.

for backup, which was already on the way, and arranged for a distraction. A distraction maneuver would have taken "seconds" to employ, and would have involved having one officer distract Landon with loud commands while a second officer moved close enough to deploy a device such as a taser to subdue him. Last, the officers could have moved closer to Landon and tased him even without a distraction, given that Landon was not suspected of a crime and had made no threatening movements towards them. Officer Bush was standing fifteen feet away from Landon when he ordered Tomy to bite. However, a taser has a range of twenty-five feet. Although Officer Bush testified that tasers are less accurate the further away an officer stands from a subject, there was nothing preventing him from moving a few feet closer to increase the likelihood he could successfully subdue Landon by tasing him in the leg or torso. Instead, rather than attempt any of these options, Officer Bush ordered Tomy to bite Landon while he was still standing a full fifteen feet away and in no immediate danger of attack.

Viewing the facts in this light, as we must on summary judgment, the officers violated Landon's Fourth Amendment rights when they ordered Tomy to bite Landon—a man who was not wanted for a crime, posed no immediate threat to the officers, and appeared unconscious or significantly impaired by blood loss. See Mercado, 407 F.3d at 1157–58 (reversing grant of summary judgment where an officer shot the suicidal plaintiff in the head even though the plaintiff had made

no threatening moves toward the police, "was not actively resisting arrest," and did not "pose[] an immediate threat to the officers at the time he was shot"). The state has "a compelling interest in preventing suicide," id. at 1157, but this Court has concluded before that an officer clearly engages in excessive force when he orders a dog to attack and bite a person who poses no threat of bodily harm to the officers and does not attempt to flee or resist arrest. See Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000).

Unlike in Priester, Landon was not suspected of a crime and may not have even appeared conscious when Officer Bush ordered Tomy to bite him. In addition, the officers had a range of less forceful means available to them. This is sufficient to cast doubt on whether Officer Bush's use of force was objectively reasonable as a matter of law.[6] We therefore reverse the district court's grant of summary judgment on Landon's § 1983 claims and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[6] The City characterizes Landon's injury in this case as "unfortunate, though less unfortunate then his intended outcome upon entering the woods," and argues that "an unfortunate outcome does not equate to unreasonableness." This argument misapprehends the crux of Landon's argument. That Landon sought to kill himself does not render the officers' actions de facto reasonable simply because the injuries he suffered did not result in his death. More to the point, Landon's argument is not that the officers violated his constitutional rights because they harmed him. Rather, he argues—correctly—there was sufficient evidence in the record to support his claim that the officers engaged in excessive force by inflicting serious injuries on him when there was no objective reason to do so. For this reason, we reverse the district court's grant of summary judgment.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 13, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 18-10108-FF
Case Style: Mark Landon v. City of North Port
District Court Docket No: 8:15-cv-02272-CEH-JSS

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellee.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Janet K. Mohler, FF at (404) 335-6178.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs